**AMOCO PRODUCTION COMPANY, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF the INTERIOR, and the National Park Service of the United States Department of the Interior.**

No. 89–C–209–B.

United States District Court,
N.D. Oklahoma.

Dec. 18, 1990.

Donald Kahl, Kent L. Jones, Fred M. Buxton, Tulsa, Okl., Mathew J. Gallo, Amoco Corp., Chicago, Ill., Donald B. Craven, James P. Tuite, Anthony F. Shelley, Washington, D.C., for plaintiff.

Tony Graham, U.S. Atty., Phil Pinnell, Asst. U.S. Atty., Tulsa, Okl., Kenton W. Fulton, U.S. Dept. of Justice, Land & Nat. Resources Div., Gen. Litigation Sec., Washington, D.C., for defendants.

### MEMORANDUM AND ORDER

VAN SICKLE, Senior District Judge.

Amoco Production Company appeals from the final decision of the Chief Appeals Officer for the Department of the Interior denying Amoco's request for certification of the Philcade Building in Tulsa, Oklahoma as a "certified historic structure" as required for income tax credit under the Internal Revenue Code, 26 U.S.C. Section 48(g), and the denial by the Keeper of the National Register to retroactively remove from the Register the Philcade as an historic building.

After a thorough review of the final administrative decision of the National Park Service of the Department of the Interior, the Court finds that the decision was not violative of the Administrative Procedure Act, 5 U.S.C. Sections 706(2)(A), (D), (E), and neither declaratory nor equitable relief will be granted. Therefore, the Court finds in favor of the defendants, National Park Service and Department of the Interior, and against the plaintiff, Amoco.

## BACKGROUND

This action centers on the rehabilitation by Amoco of the 13–story Philcade Building located in downtown Tulsa, Oklahoma. Original construction of the Philcade began in 1929 by Waite Phillips, a prominent Tulsa philanthropist and industrialist, and was completed in 1931. The Philcade was designed by Oklahoma architect Leon Senter, and is considered one of his most important works.

The building houses commercial activities on its ground floor, mezzanine and second floor areas. Marble pilasters, ornamental plaster frieze and ceiling comprise the Philcade's ground floor interior, with its corridors containing terrazzo floors, marble wainscot, and solid mahogany office doors. The shape of the building's exterior third through thirteenth floors originally formed a deep "U" or "H" shape, with two tower wings forming a light well and allowing natural ventilation for interior spaces. Terra cotta and cast iron cover the building's exterior and the wings contain light colored brick, double-hung steel windows and brick chevron pilasters.

In the early 1980's, the Philcade was in need of rehabilitation in order to make it compliant with modern safety requirements.[1] Amoco sought to make the required structural safety changes while maintaining the historical character of the building. After drawing plans containing a number of different options for renovating the building, Amoco met with the Oklahoma State Historic Preservation Office in July, 1984 to advise them of the rehabilitation plans and to seek the federal income tax credits provided under statute.

Amoco's decision to rehabilitate and modernize the Philcade was guided, in part, by the tax incentive provisions of the Economic Recovery Tax Act of 1981. Under that Act, two modes of tax incentives allowed a building owner to obtain either (1) a 20 percent tax credit for rehabilitation of structures at least 40 years old or (2) a 25 percent tax credit for the rehabilitation of a "certified historic structure." 26 U.S.C. Section 46(a)(2)(F)(i) (West Supp.1984).

To qualify for the 20 percent tax credit, a building owner need not seek National Park Service approval; the only substantive requirement was that the building be at least 40 years old. Consistent with the two methods of seeking federal tax subsidies, the 20 percent tax credit was not available if expenditures were "attributable to the rehabilitation of a certified historic structure." 26 U.S.C. Section 48(g)(2)(B)(iv).

Qualification for the 25 percent tax credit is a much more complicated procedure and requires two part certifications by the Secretary of the Interior, acting through the National Park Service. Part I requires that the property be certified as a historic structure through nomination for inclusion on the National Register of Historic Places. Part II dictates that the rehabilitation project must be certified by the National Park Service as consistent with the historic character of the building. 26 U.S.C. Section 48(g). The certification process begins through the State Historic Preservation Officer who makes recommendations to the National Park Service as to both parts of the certification process. These recommendations by state historic officers are generally followed by the National Park Service, but the final decision by law must be made by the Secretary upon review of the application and related information. 36 C.F.R. Section 67.4(b)(3), (5). Part II certification, through state historic officer recommendation, may be sought at any point after Part I certification, even after actual rehabilitation work has begun, but the regulations encourage certification prior to building rehabilitation. 36 C.F.R. Section 67.6(a)(1). Undertaking rehabilitation prior to National Park Service approval subjects the building owner to the risks of non-certification. *Id.*

Amoco claims that it presented representatives of the State Historic Preservation Officer, at the July 1984 meeting, its plans for the Philcade, which included the construction of a connecting link between the open wings of the "U", partially set back, which would eliminate potential entrapment of the occupants of the wings.[2]

---

1. As originally constructed, the Philcade's long wings formed dead-end corridors which, in a fire or other emergency, could entrap an entire wing's occupants.

2. A second option considered but rejected by Amoco involved the construction of internal stairways at the ends of each wing. Such construction, Amoco claimed, would have "weakened the building structurally," and would have interrupted vital computer operations. The government contends that the decision to choose the connecting link option was a matter of preference and not one of necessity.

The National Park Service contests the scope of the meeting, presenting evidence that the discussions of the rehabilitation were preliminary, that the State Historic Preservation Officer's representatives discussed the tax credit and certification procedure, and that the representatives informed Amoco of the risks of undertaking rehabilitation prior to Part II National Park Service certification.

In July 1986, the Oklahoma Preservation Review Committee considered the request by Amoco for Part I certification, i.e. the nomination of the Philcade for listing on the National Register of Historic Places. The parties dispute whether rehabilitation plans were presented; but evidence exists in the administrative record which shows that construction had already begun on the Philcade and Amoco had been informed of the risks therein. Nonetheless, the Committee decided to nominate the Philcade for Part I certification. On September 18, 1986, the Keeper of the National Register approved the nomination and the Philcade was placed on the National Register.

On November 25, 1986, Amoco sought Part II certification for the Philcade from the State Historic Preservation Officer. The State Historic Preservation Officer recommended certification, subject to certain conditions, and sent the application to the National Park Service Rocky Mountain Regional Office in Denver, Colorado on February 13, 1987. Evidence in the administrative record reveals that the State Historic Preservation Officer recommended that the Park Service further review the application because of a perceived lack of information concerning demolition, substantial interior alterations and construction of the new addition to the Philcade.

On April 21, 1987, the National Park Service denied Amoco's Part II application by determining that the rehabilitation was not "consistent with the historic character of the property or the district in which it is located and the project does not meet the Secretary of the Interior's 'Standards for Rehabilitation'." Specifically, the Park Service found that the proposed construction of a connecting link between the build-ing's two wings, proposed changes to the Philcade's interior, and the proposed replacement of the building's steel double-hung windows with bronze aluminum sash, each and of themselves constituted a failure of the Secretary's standards and necessitated certification denial. The National Park Service considered the proposed connecting link a critical flaw in the rehabilitation plans:

> If constructed as proposed, major character defining features of the building will be destroyed. The most damaging work item is the addition of a connecting link between the east and west wings. The connector changes the historic appearance of the building by "filling in" the deep space created by the two wings. The architectural detailing of the two wings and the "U" shape of the building with its decorative friezes and chevron pilasters make a strong statement that would be destroyed if filled in by the connector as is proposed.

Administrative Record, Exhibit K, pp. 3–4.

Amoco appealed the certification denial by the National Park Service to Ernest Allen Connally, the Park Service's Chief Appeals Officer in Washington, D.C. After a *de novo* review, the Appeals Officer on March 31, 1988 dismissed the objections of the regional office to the building interior alterations, and to the steel windows, which Amoco had offered to repaint in a more historically accurate color. The Appeals Officer nonetheless denied the appeal based on the addition of the connecting link, holding that Amoco's decision to construct the link was a matter of preference, among available approaches to the safety code problems, which "radically impair[ed] the essential character of the Philcade." According to the Appeals Officer:

> The overall character of the Philcade Building rests in its integrity as a complete architectural composition, and not merely on individual ornamental elements, rich though they certainly are on the lower levels of the building. The shape of the building, determined in large measure by the unadorned wings and the deep well, gives the whole a presence that is evident from even a cur-

sory glance at photographs taken before the project began....

In an era before air conditioning, it was essential to provide as much natural ventilation, as well as natural light, as possible for interior spaces. This requirement was met, as in the Philcade Building, by extending wings alongside a lightwell, thereby vastly increasing the exterior surface area and providing ventilation to the interior. The arrangement permitted light to enter offices on both sides of the corridors ... This practical architectural solution to a major practical problem resulted in the characteristic building form seen here, typically of buildings erected in the 1920s and 1930s. (It was, furthermore, a distinctly American solution. This form is not usually found, for example, in European buildings of the same era.

Chief Appeals Officer Decision at 6 (parenthetical original).

Amoco thereafter filed a Petition for Reconsideration on March 31, 1988 and asserted that: (1) The Philcade's most important historic and architectural feature was its lobby/arcade and not its external form; (2) the decision to construct the connecting link, and not internal stairs, was not a "matter of preference" but was made to prevent damage to the lobby/arcade and the exterior street-level facade; (3) the placement of the connecting link, slightly set-back into the building, and the addition's design and materials preserves the original historic form and architectural style and character; (4) the National Park Service had previously certified other rehabilitation projects involving similar "infill" additions.

On October 12, 1988, the Chief Appeals Officer, after analyzing voluminous additional material submitted by Amoco, determined that the previous decisions of the National Park Service denying certification were proper. The Appeals Officer strongly disagreed with the assertion of Amoco's expert, Professor Wilson, that the lob-

by/arcade, and not the external form, was the character-defining feature of the building. The Appeals Officer stated: "The external form ... was the dominant determinant of its overall character; it was the overriding expression of the organizing concept of the building as a coherent work of architecture." Construction of the connecting link cannot be reconciled with the historic character of the building, according to the Appeals Officer, and the harm done to the form of the building is immense.

Addressing Amoco's second point, the Chief Appeals Officer asserted that none of the evidence provided by Amoco showed that the internal stair option was unworkable or impossible; that Amoco, prior to its first meeting with the State Historic Preservation Officer, chose not to consider the internal stair option, as such an operation would lead to disruption of the computer operations housed in the building. Although a matter of preference involving difficult choices and technical problems, Amoco nonetheless must, according to the Appeals Officer, "forego the historic preservation tax credit if the work does not meet the minimum statutory test for certification."[3] Chief Appeals Officer Decision on Reconsideration at 3. Therefore, the Appeals Officer could not accept the alteration to the Philcade's "historic form as a trade-off for the preservation of the lobby."

Although the regulations provide that each project is unique and is individually assessed prior to certification, the Appeals Officer addressed the contention by Amoco that other buildings having similar "infill" constructions obtained National Park Service certification. Each of the buildings suggested by Amoco for which National Park Service certification ensued, the Falls Building in Memphis, Tennessee and the Daniel Boone Hotel in Wheeling, West Virginia, have different light well sizes and locations and thus, according to the Appeals Officer, can not be equated with the

**3.** The Chief Appeals Officer also noted that even if construction of the connecting link was the only possible means to remedy the safety code problems, the regulations do not allow the Na-

tional Park Service to certify a building rehabilitation project it considers inconsistent with the historic character of the building. *See* 36 C.F.R. Section 67.7(d).

Philcade's light well. The addition to the Folger Shakespeare Library in Washington, D.C. was constructed in the building's rear, so that the historic nature of the building remained intact after rehabilitation. The Northwestern Knitting Company's construction of infills connecting several buildings of different sizes in Minneapolis was not similar at all to the other projects cited. As a final point, the Chief Appeals Officer commented that the rehabilitation of the Philcade was an admirable one that required the expenditure of a great deal of time and money; nevertheless, the drastic change to the structure required that the certification be denied.[4]

On December 4, 1989, Amoco petitioned the State Historic Preservation Officer requesting the delisting of the Philcade from the National Register pursuant to 36 C.F.R. Section 60.15(a)(4),[5] which authorizes the Keeper to remove properties from the National Register where there has been prejudicial procedural error in the nomination and listing process.[6] The State Historic Preservation Officer responded by maintaining that no procedural error occurred during the nomination of the Philcade, and that photographs and other documentation provided during the procedure established the building's eligibility for placement on the National Register. The decision to nominate the Philcade to the National Register, according to the Preservation Officer, was not based on proposed additions to the building, nor tax considerations.

The Keeper of the National Register on February 2, 1990 determined that no procedural error had occurred in the nomination and listing of the Philcade, and that removal based on equitable considerations was not allowed. Buildings are listed according to information available at the time of application, and, stated the Keeper, there is no duty for the State Historic Preservation Officer to inform the National Park Service of any proposed rehabilitation to the building. A building can be removed from the National Register pursuant to 36 C.F.R. Section 60.15(a)(1) if the building goes through a significant change and has lost the qualities for which it was nominated. Despite the construction by Amoco of the connecting link, the Keeper determined that the Philcade, considered as a whole, retained "sufficient integrity of location, design, setting, materials, workmanship, feeling, and association within the meaning of 26 C.F.R. [Section] 60.4 to continue to qualify it for listing within the National Register as a significant example of the Art Deco style as developed in Tulsa, Oklahoma." Keeper's Administrative Record, Exhibit 9 at 4.

On March 16, 1989, Amoco commenced this action for judicial review of the National Park Service's denial of certification. Amoco alleged that the certification denial was violative of the Administrative Procedure Act, 5 U.S.C. Sections 706(2)(A), (D), (E) as it was allegedly arbitrary, capricious,

---

**4.** Additionally, the Chief Appeals Officer made the following comment:

I wish to make it clear that my determination regarding this project is based on its effects on the Philcade Building, not on Amoco's failure to submit an application before commencing rehabilitation work. Amoco was free to apply for National Park Service review before, during, or after rehabilitation work. However, if by waiting to apply until the project was well underway, Amoco reached a point of no return, it may not place the blame retrospectively on the Oklahoma State Historic Preservation Office for Amoco's own failure to act.

Chief Appeals Officer Decision on Reconsideration at 6.

**5.** 36 C.F.R. Section 60.15 provides:

(a) Grounds for removing properties from the National Register are as follows: (1) The

property has ceased to meet the criteria for listing in the National Register because the qualities which caused it to be originally listed have been lost or destroyed, or such qualities were lost subsequent to nomination and prior to listing; (2) additional information shows that the property does not meet the National Register criteria for evaluation; (3) error in professional judgment as to whether the property meets the criteria for evaluation; (4) prejudicial procedural error in the nomination or listing process.

**6.** Amoco claimed the procedural error occurred as a result of the State Historic Preservation Officer's failure to inform the National Park Service that Philcade was to be rehabilitated. The Park Service may have then questioned Amoco's plans before the Philcade was listed on the National Register.

an abuse of discretion, not in accordance with law, and was unsupported by substantial evidence. Amoco sought a directive from the Court to the National Park Service granting Amoco certification for the Philcade project. After seeking retroactive delisting with the Keeper of the National Register, Amoco amended its complaint seeking a declaration that the Philcade be retroactively delisted. Specifically, Amoco charged that the listing of the Philcade on the National Register was a "mistake and should be declared void *ab initio.*" Such a retroactive delisting would account for "equity" by placing Amoco in its original position prior to seeking certification, thus allowing it to obtain the 20 percent tax credit.

A motion for summary judgment was filed by Amoco on September 25, 1990 and by the National Park Service on September 17, 1990. In its brief supporting its motion for summary judgment, Amoco argues that: (1) the National Park Service ignored evidence in the record that construction of the connecting link did not alter the most significant feature of the Philcade, its lobby/arcade, and that the rehabilitation work was consistent with the building's historic character; (2) the National Park Service cited no authority to support its findings concerning the architectural and historic significance of the exterior form of the Philcade in comparison with other buildings local and national; and (3) the National Park Service's certification denial in this case conflicts with its approval of comparable rehabilitation projects. As to its claim for delisting of the Philcade from the National Register, Amoco argues that the Court through its equitable powers should remedy the "Catch–22" which confronts Amoco as a result of the failure by the Keeper to delist. The original listing, Amoco argues, was a mistake and now it is left with a building for which none of the rehabilitation expenditures may receive favorable tax credits.

The National Park Service, in response to the claims of Amoco, argues that: (1) The Park Service's decision denying certification of the Philcade project was the result of reasoned decision-making based on the standards for "certified rehabilitation" and

should be sustained; (2) the Chief Appeals Officer exercised reasonable decision-making in his decision denying certification on appeal and on reconsideration because the connecting link did not satisfy the Secretary's Standards for Rehabilitation and because building codes do not overcome a determination regarding rehabilitation; and a site inspection by the Park Service was neither required nor necessary; and (3) decisions by the National Park Service in other proceedings are distinguishable from the Philcade project and do not require a different result. The National Park Service further argues that review of the Keeper's determination not to delist the Philcade from the National Register is governed by provisions of the Administrative Procedures Act and that Congress intended for the consequences which result from a failure to preserve properly historic resources.

On October 23, 1990 the parties agreed that the evidentiary record be closed in this matter and that the Court render its determination on the record before it. On November 30, 1990, this Court heard oral arguments in the matter which included an on-site viewing of the Philcade Building.

ISSUES

I. Whether the decision by the National Park Service denying certification for the Philcade Building as a "Certified Historic Structure" was arbitrary or capricious or otherwise violative of the Administrative Procedure Act, 5 U.S.C. Section 500 *et seq.*

II. Whether the Court, on the basis of equitable considerations, should direct the Keeper of the National Register to delist the Philcade Building from the National Register.

DISCUSSION

I. *Whether the decision by the National Park Service denying certification for the Philcade Building as a "Certified Historic Structure" was arbitrary or capricious or otherwise violative of the Administrative Procedure Act, 5 U.S.C. Section 500 et seq.*

The scope of review with regard to administrative decisions of an agency is gov-

erned by the provisions of the Administrative Procedure Act. 5 U.S.C. Section 500 *et seq.* This court must strike down the findings and conclusions of an agency that are, *inter alia*, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," or are "unsupported by substantial evidence in the case. 5 U.S.C. Section 706(2); *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *Yaffe Iron and Metal Co. v. EPA,* 774 F.2d 1008 (10th Cir.1980). The Court's review is narrow, but it does not substitute its judgment for that of the agency, nor does it merely "rubber stamp" the Secretary's action. *Volpe, supra; Grynberg v. Watt,* 717 F.2d 1316 (10th Cir.1983); *Thomas v. Sullivan,* 876 F.2d 666, 669 (8th Cir.1989). Moreover, a court must confine its review to the record of the agency and "additional evidence is not to be admitted." *Roberts v. Morton,* 549 F.2d 158, 160 (10th Cir.), *cert. denied,* 434 U.S. 834, 98 S.Ct. 121, 54 L.Ed.2d 95 (1977).[7]

Amoco argues that the National Park Service ignored evidence in the record supporting the position that the most significant feature of the Philcade was its lobby/arcade and not its external form, and that the rehabilitation work was consistent with the building's historic character. According to Amoco, the record contains expert evidence that construction of the connecting link did not adversely affect the building's character. Amoco contends the National Park Service failed to present contrary evidence, and never viewed the building; thus, statements by the Park Service concerning the importance of the external form were conclusory and not reasoned from the facts.

The National Park Service argues that under the Secretary's Standards for Rehabilitation the agency is granted discretionary authority in certification after a consideration of all relevant factors. The Chief Appeals Officer evaluated the project based on "before" photographs, and information and history contained in the official documentation furnished by Amoco in its application for nomination to be placed on the National Register. Each of Philcade project's shortcomings were fully identified and explained in the Appeals Officer's decisions and each holding had a rational basis under the Secretary's Standards.

The National Park Service also vigorously defends the charge that it failed to make a reasoned decision because it did not conduct an on-site inspection of the Philcade. Initially, the Park Service notes that inspections are authorized under 36 C.F.R. Section 67.6(e) but are not required; a site visit in most cases is not necessary or practical as complete documentation, including photographs, as recommended under the regulations. The administrative record is replete with photographs of the Philcade both prior to and after rehabilitation, and the building's interior and exterior portions are clearly evident. Combined with architectural drawings of the building, the National Park Service argues that there are no grounds whatsoever to suggest that it was unable to make a reasoned decision based on the record before it.

■ The Court finds the National Park Service's arguments persuasive and rejects Amoco's contention that the Park Service provided an unreasoned or conclusory certification denial. The National Park Service is necessarily bound by regulatory standards defining certification of historic structures, but it also is vested with discretionary authority upon evaluation of all relevant evidence. Evidence in this case included the aforementioned photographs and architectural drawings, the statement of Professor Wilson, and all other information contained in the Part I and Part II applications (in addition to information supplied by Amoco on appeal and reconsideration).

A site visit by the National Park Service to the Philcade certainly would not have been detrimental to its consideration of Amoco's application. Ample evidence ex-

---

7. It should be noted at this juncture that neither the arguments presented before the Court nor its viewing of the Philcade on November 30, 1990 will be used in its determination of the issues at hand.

isted from these applications, however, to make a reasoned analysis and decision, and a finding that evidence supports the decision of the National Park Service.

■ Essentially, Amoco's contention boils down to a question concerning the architectural significance of the two wings, which it claims is overshadowed by the interior lobby. On numerous occasions, however, Amoco referred to the exterior architecture in its description of the historic nature of the Philcade. It commented in Part I of its application: "The wing and well configuration of the office floors together with the large windows offered each tenant reasonable comfort in an era before modern air conditioning." Attachment A, Item 7. Combined with information concerning the history of such structures in the 1920s and 1930s, it was not unreasonable for the National Park Service to determine that the characteristic historic nature of the Philcade was its exterior form. Moreover, the National Park Service determination included an evaluation of all relevant evidence regarding the Philcade including the interior and exterior. It simply does not follow that, because the Park Service differed with Amoco in what it considered the Philcade's chief historic characteristic, its determination was unreasonable.

■ Amoco argues further that evidence of other rehabilitations where the National Park Service granted certification compels it to make a similar ruling in this case. It is not necessary for the Court to elaborate on each of the case examples provided by Amoco, as the Court rejects the attempt to bind the National Park Service's discretionary authority to precedent. Each application must be viewed individually, and a reasoned decision must be made with certification only upon a project's consistency with the Secretary's Standards for Rehabilitation. Having considered and rejected these other projects, the Chief Appeals Officer went beyond what was necessary in order to make his reasoned decision. That decision denying certification will not be disturbed.

II. *Whether the Court, on the basis of equitable considerations, should direct the Keeper of the National Register to delist the Philcade Building from the National Register.*

■ Amoco seeks to enlist the equitable powers of the Court to direct the Keeper of the National Register to retroactively delist the Philcade Building from the National Register and thereby remedy what it considers the unfair result caused by the National Park Service's certification denial. Without retroactive delisting, Amoco will not have available federal tax credits for the Philcade's rehabilitation expenditures. These tax credits were initially made unavailable by the failure of the Park Service to certify the Philcade as a "certified historic structure." This so-called "Catch–22" situation should be remedied, according to Amoco, by placing it in the position it would have been in had the Philcade not been listed on the National Register.

The National Park Service responds to Amoco's call for equitable relief by arguing that there must first be a lack of an adequate remedy at law. That legal remedy, it claims, can be sought by Amoco through judicial review pursuant to the Administrative Procedure Act. The Park Service cites Pomeroy for the assertion that "wherever the rights of the parties are clearly governed by rules of law, courts of equity will follow such legal rules." 2 J. Pomeroy, *Equity Jurisprudence* Section 425, pp. 189–90 (5th ed. 1941). Amoco's rights are governed by law, according to the National Park Service, because Congress intended that a flawed rehabilitation of a certified historic structure would lead to the same result Amoco is faced with.

Amoco seeks a remedy, however, which does not rest in law. The National Park Service could not grant, under the regulations, the relief Amoco seeks in this case since the delisting of a historic structure cannot be done retroactively. 36 C.F.R. Section 67.6(f). Review under the Administrative Procedures Act standards by a Court would clearly have no remedial effect in this situation. Thus, the Court

must consider the issue based on equitable principles.

Although Amoco can seek the Court's equity jurisdiction, the equities of this particular scenario do not favor retroactive delisting of the Philcade from the National Register. Amoco was aware of the modes of obtaining federal tax credits prior to its attempt to have the Philcade listed on the National Register. The choice to have it nominated for listing, and the completion of Part I of the two part certification process, necessarily requires that it fulfill the Secretary's Standards for Rehabilitation. The attendant risk of pursuing such a course involves potential denial of certification, as was seen in this case. The risks involved necessitate that a building owner seek approval prior to, or in the early stages, of rehabilitation. Preliminary approval of projects is allowed and suggested by the regulations. Having been informed of such risks by both the State Historic Preservation Officer and the National Park Service, Amoco cannot now claim that it was unaware of the consequences of certification denial.

Furthermore, to allow the retroactive delisting of the Philcade and thus make Amoco's expenditures available for tax credits at the 20 percent level would permit a building owner to improperly rehabilitate a certified historic structure, obtain a retroactive decertification, and then claim the federal tax credit for the non-historic rehabilitation. *See* Internal Revenue Service Letter to Keeper of National Register, Keeper's Administrative Record, Exhibit 8 at 3. While Congress sought to provide incentive for historic rehabilitation, it also sought "to provide a strong disincentive for failing to properly rehabilitate a certified structure." *Id.* Therefore, the Court finds that such a retroactive delisting would not further the Congressional intent with regard to rehabilitation of historic structures.

Finally, the Court notes that Amoco has expended substantial sums in its rehabilitation of the Philcade. Through a series of questionable judgments in its approach to the certification process, and in analyzing the potential risks which necessarily are involved in administrative procedures, Amoco has placed itself in the present unfavorable situation. The National Park Service acted reasonably and within its discretion in making its decisions regarding the Philcade project, and gave thoughtful and thorough review upon appeal and reconsideration of its certification denial. Having observed no arbitrary or capricious abuse of discretion, the Court finds that the actions of the National Park Service were proper and its decisions are hereby affirmed.

While the case came before the Court on cross motions for summary judgment, the parties have stipulated that the evidentiary record in this case be deemed closed and that the Court may adjudicate the merits based on the record before it. Since the parties have stipulated to the evidence, and not the facts, the action is properly before the Court on a motion for judgment on the merits pursuant to Rule 52 of the Federal Rules of Civil Procedure. After a careful consideration of the stipulated evidence and the briefs, the Court finds that the decisions of the National Park Service were not arbitrary, capricious, an abuse of discretion, or unsupported by substantial evidence, and were in accordance with law, and the decision therefore was not violative of the Administrative Procedures Act. Therefore, the Court finds in favor of defendants, the Department of the Interior and the National Park Service, and against the plaintiff, Amoco, and denies Amoco's request for declaratory and injunctive relief.

LET JUDGMENT BE ENTERED ACCORDINGLY.